UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DANA DOUGLAS, | * | CIVIL ACTION NO: 21-cv-00599 |
| *Plaintiff,* | * | |
| | * | SECTION "F" |
| VERSUS | * | |
| | * | JUDGE MARTIN L.C. FELDMAN |
| ST. JOHN THE BAPTIST PARISH | * | |
| LIBRARY BOARD OF CONTROL, | * | MAGISTRATE JUDGE |
| ST. JOHN THE BAPTIST PARISH | * | DONNA PHILLIPS CURRAULT |
| COUNCIL, AND MARIA COY | * | |
| *Defendants* | * | JURY TRIAL DEMANDED |

* * * * * * * * * * * * * * * * * * * * *** *

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes Dana Douglas, Plaintiff herein, who respectfully files Plaintiff's First Amended Petition for Damages, pursuant to Fed. R. Civ. P. 15, replacing and superseding the allegations presented in Plaintiff's Petition for Damages, representing and averring the following:

1.

Plaintiff, Dana Douglas (hereinafter "Ms. Douglas" or "Plaintiff"), is an African-American female who is beyond the age of majority, has the requisite mental capacity to bring this lawsuit, and is domiciled in the Parish of St. John the Baptist Louisiana.

2.

Made a defendant herein is the St. John the Baptist Parish Library Board of Control, (hereinafter "Board") the governing board of the St. John the Baptist Parish library, which consists of an eight-member board appointed by the St. John the Baptist Parish Council pursuant to La R.S. 25:211 *et seq.* and located in St. John the Baptist Parish, State of Louisiana.

1

3.

Made defendant herein is the St. John the Baptist Parish Council, (hereinafter "Parish Council") a public entity organized and existing under the laws of the State of Louisiana and has its principal place of business in the State of Louisiana and within the jurisdiction of the Court.

## FACTUAL BACKGROUND

4.

On or about January 8, 2018, Dana Douglas was hired by the Board to serve as Assistant Director for the St. John the Baptist Parish Library System. Her qualifications for the job exceeded the requirements stated in the job description, which focused on duties related to human resources and personnel.

5.

Ms. Douglas brought to the job more than 18 years of experience working in human resources and held a Bachelor of Science Degree in Business with a Concentration in Management, as well as a Master's in Business Administration. Having worked as a Library Substitute prior to taking on the Assistant Director role, Ms. Douglas was thoroughly familiar with operations at the St. John the Baptist Parish Library System on day one.

6.

At the time of Plaintiff was hired, Trina Smith, also an African-American female, was the Director of the St. John the Baptist Parish Library System. She came to the job with more than 20 years of experience working in library services, gained mainly in San Antonio, Texas where she had spent the brunt of her career. In addition to a bachelor's degree, she held a Master's Degree in Library Information Science and became a Certified Library Director for the State of Louisiana while working with the Library System.

7.

At all times relevant to this dispute, Ms. Douglas and Ms. Smith operated under the direct supervision of the Board.  At the time, Virgie Johnson served as the President of the Board.

8.

Ms. Douglas and Ms. Smith worked well together and library operations ran smoothly for several months with no complaints from the Board or the community that they served.  Morale among the Library System staff was high and improvements in the system were being made regularly.

9.

During their time working together as Director and Assistant Director, Plaintiff and Ms. Smith implemented new community programs, including STEM and Spanish language offerings; dramatically improved both electronic and paper book collection by contracting with a new publisher and adopting a new catalog system; improved facilities at branches, including dramatically improved security by installing cameras in each of the branches.  In addition, they purchased two additional vehicles to facilitate courier services between the branches.  These changes were greeted with praise by the St. John the Baptist Parish community.

10.

Despite the demonstrable progress and improvements that Ms. Smith and Ms. Douglas were making across the Library System, the two soon came under attack by Maria Coy ("Ms. Coy"), a board member, who did not respect the work and improvements being made by two African-American women in leadership of the St. John the Baptist Parish Library System.

11.

Ms. Coy, herself Caucasian, was a relatively new member of the Board, having been appointed in 2017, within a year of Ms. Douglas becoming Assistant Director. In her short time on the Board, however, Ms. Coy had already developed a history of antagonizing and attacking the performance of African Americans from her position of authority.

12.

Despite the success and progress they were making, Ms. Coy began making unannounced visits to the Library System offices at the Norris Millet Sr. Branch where Ms. Smith and Ms. Douglas were housed. It was immediately evident that Ms. Coy's visits were not intended to encourage or assist Plaintiff and her colleagues; rather, Ms. Coy's purpose was to be disruptive and slow the progress being made.

13.

Consistent with her history of attacking African-Americans, Ms. Coy would confront Ms. Douglas or Ms. Smith and unjustifiably accuse them of having failed to perform a task, then commence with berating the two and accusing them each of being incompetent, asserting on more than one occasion that there were more talented and knowledgeable people who could perform their jobs.

14.

While members of the library staff was typically present for Ms. Coy's attacks, she did not refrain when members of the community were present. In or about June of 2018, Ms. Coy made the first of several attempts to publicly humiliate and demean Ms. Douglas when she appeared during an event at the library called "Tales with a Twist" where families from the public, vendors and fellow employees were present. On that occasion, Coy aggressively attacked

Plaintiff because she did not disclose information related to Ms. Smith's personal affairs and whereabouts that day.

15.

Further, on more than one occasion, Ms. Coy was accompanied by a fellow member of the Board when she would make such unannounced visits to the Plaintiff's office.  Based on her conduct, Ms. Coy's obvious goal was to demonstrate to the fellow Board member that the two African-American women were not capable of performing their jobs. On one such occasion at the Norris Millet Sr. Branch offices, Plaintiff overheard Defendant Coy state to a fellow Board member that she was concerned with Ms. Smith's and Ms. Douglas' "lack of savvy."

16.

Ms. Coy's demeaning comments were not restricted to in-person attacks; rather, she used every medium and opportunity available to unjustly criticize Ms. Smith and Ms. Douglas, including an August 7, 2018 email message to the entire Board that included the statement, "The Director and Assistant Director are either misguided, ignorant of the law, or think they are above the law."

17.

Later in January of 2019, the Board unreasonably decided in a closed-door "executive session" that Ms. Smith was not performing adequately and terminated her employment as Director.  Upon information and belief, Ms. Smith's termination was the result of Ms. Coy's relentless campaign against the two highest-ranking African-American women in the LaPlace Library System.

18.

Upon Ms. Smith's termination and demotion to Librarian of the Children's Department, Plaintiff Douglas was named the Interim Director and, despite never receiving an increase in her salary to match her new role and increased duties, she continued her employment with the Board and fulfilled the role of both the Assistant Director and Director.

19.

Later in January of 2019, Plaintiff was unjustifiably written up for allegedly entering into a contract for payroll services without proper authority. Upon information and belief, the false accusation was prompted by Ms. Coy, whose claim is flatly refuted by documentary evidence; nevertheless, the Board accepted Coy's rendition and accusations and proceeded with the baseless disciplinary action.

20.

When Ms. Douglas refused to sign the write-up form, Ms. Coy visited Plaintiff's office with the Board President, Ms. Johnson, in an effort to force or coerce her to sign the disciplinary form. Ms. Coy became so violently irate that she had to be forcibly restrained from physically assaulting Ms. Douglas, as she was leaning over Ms. Douglas' desk, yelling in her face while pointing her finger directly at Plaintiff. As she was taken away, Ms. Coy yelled from the hallway, "I am not finished yet! I'm just getting started!"

21.

Despite her observations of Ms. Coy's behavior and conduct, Ms. Johnson, the Board President, did not take any action in Plaintiff's defense or to proactively bring a halt to Ms. Coy's harassing behavior.

22.

In February of 2019, during a meeting of the full Board, Ms. Douglas raised the issue of Coy's harassing and demeaning conduct, notifying the full Board that since she had been named Interim Director she had consistently been harassed and attacked by Ms. Coy because she is African-American. Ms. Coy responded at the meeting, "If you don't like the way I talk to you or the way I engage with you, you can quit now!" The next day, Coy again wrote Plaintiff up, accusing her of being insubordinate because Plaintiff exercised her right to oppose the harassing and disparate conduct.

23.

Again, Ms. Coy and Ms. Johnson, as President, visited Plaintiff at her office to present her with the write-up. Ms. Johnson indicated that she wanted to be present to witness the presentation, reminding Plaintiff that each member of the Board was Ms. Douglas' boss and had the authority to discipline her, as Ms. Coy was attempting to do. When Plaintiff questioned the procedural steps taken to discipline her, Coy once again became irate and accosted Plaintiff for being insubordinate.

24.

Undaunted, in March of 2019, Coy once again fabricated a charge against Plaintiff, this time accusing Plaintiff of having authorized an unapproved $20,000.00 book purchase. Because this write-up, like the previous two, lacked any truth or justification, Plaintiff once again refused to sign and acknowledge the disciplinary write-up.

25.

In addition to the statements and attacks on Ms. Douglas' character and competence that Ms. Coy undertook one-on-one at Plaintiff's office, which often involved Ms. Coy aggressively

invading Plaintiff's personal space and waving her finger directly in Ms. Douglas' face, Ms. Coy routinely made disparaging comments about Ms. Douglas at board meetings.

26.

Ms. Coy's comments at board meetings were implicitly defamatory and designed to undermine the respect and authority the Board had conveyed to Plaintiff in hiring her as Interim Director. The statements included, "She's too young for the job" and "She doesn't have a clue." At the time, Plaintiff Douglas was in fact 49 years old.

27.

In addition to the statements accusing Plaintiff of being a thief, a liar and embezzler, Defendants were also responsible or contributed to the publication of newspaper articles that were damning of Plaintiff's performance, despite the clear progress made to advance the Library System.

28.

Upon information and belief, Ms. Coy never attacked the competence or character of any other non-African-American employees of the Board or under the Board's authority.

29.

In March of 2019, Plaintiff Douglas, along with several other aggrieved Library System employees, went to the Parish Council to address a variety of issues, first addressing two members in private and then addressing the entire panel at a public meeting. Plaintiff's sole purpose was to complain about the harassment and disparate treatment she had suffered from the Board, as led by Ms. Coy, based solely on Ms. Douglas' race. Ultimately, the Parish Council declared that it could render no assistance because it lacked the authority to control the actions over the Board of Control.

30.

Even prior to complaining directly to the Parish Council, Plaintiff had on several occasions contacted the State Library of Louisiana, to complain about the Board's conduct and seek guidance as to any recourse she may have. Unfortunately, she was informed that the State Library lacks any responsibility for the Board or authority over its actions.

31.

In April of 2019, when word got back to the Board that Plaintiff had attempted to go over their heads and voiced her race-based discrimination claims to the Parish Council, Plaintiff was immediately suspended from her job.

32.

The suspension was based on illegitimate and false claims—again initiated by Coy—that Ms. Douglas had engaged in alleged payroll improprieties, including the accusation that she paid herself an unauthorized $10,000.00 once assuming the role of Interim Director.

33.

Adding insult to injury, the Board unlawfully suspended Plaintiff before conducting an investigation, in direct violation of Ms. Douglas' due process rights.

34.

Further, the Board violated Plaintiff's protected rights by the open meeting laws by conducting what essentially amounted to a public trial at board meeting open to the public, at which time Ms. Coy, Ms. Johnson and other member of the Board attacked her competence and character in the most publicly and demeaning manner.

35.

At the close of the April 22, 2019 proceedings conducted at the public board meeting, Ms. Johnson's suspension was publicly announced and took effect immediately, ultimately lasting until May 13, 2019.

36.

Conceding that Ms. Douglas' rights had been violated with the handling of the accusations and punishment issued to her, the Interim Director who replaced Ms. Douglas, informed Ms. Douglas that she could return to work on May 13, 2019.

37.

The very same day Plaintiff returned from her suspension, May 13, 2019, Interim Director Randy DeSoto, a Caucasian male, met with Ms. Douglas and handed her a second notice of suspension, effective immediately.

38.

The second suspension was predicated on "pending investigation" into the alleged payroll improprieties and lasted from May 13, 2019 until June 27, 2019.

39.

On June 27, 2019, Mr. DeSoto attempted to email Plaintiff Douglas to notify her that the Board had voted to terminate her employment, effective June 27, 2019.  Ms. Douglas did not receive the June 27, 2019 email until it was re-sent to her actual email address and was received by her on July 3, 2019.

40.

As alleged above, Ms. Douglas was replaced as Interim Director by DeSoto, a Caucasian male, on an interim basis, and the role of Director was ultimately filled by Andrea Tullous, a Caucasian female.

41.

Ms. Douglas contacted the Equal Employment Opportunity Commission (EEOC) and filed a formal Charge of Discrimination with the EEOC on or about July 19, 2019, complaining of the persistent discriminatory and harassing treatment she had received from Ms. Coy and the Board, based on her race and age, while also alleging that she suffered unlawful retaliation.

42.

Ms. Douglas received notice of her "Right to Sue" on or about September 9, 2020, which affirms that Plaintiff has exhausted all of her administrative remedies and was thus fully authorized to initiate this legal proceeding against the defendants.

## **CLAIMS**

43.

At all times relevant herein, Defendants were and remains liable for the conduct of its managers, employees and/or agents, under the doctrine of Respondeat Superior, as all of the conduct alleged herein occurred in the course and scope of such managers', employees' and/or agents' respective work duties.

44.

Upon information and belief, all of the actions complained of herein were made with malice and/or reckless indifference to Ms. Douglas's protected rights.

45.

Defendant, in violation of the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301, *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, has engaged in unlawful employment practices consisting of, but not limited to, the intentional discriminatory terms and conditions of employment resulting in Ms. Douglas

being subjected to discriminatory terms and conditions of employment which resulted in her being disciplined and subjected to disparate treatment because of his race, thus entitling Plaintiff to money damages.

46.

As an African-American, Plaintiff is a member of a protected class based on her race.

47.

Plaintiff was fully qualified for both the position of Assistant Director and Director of the St. John the Baptist Parish Library System, as demonstrated by the factual allegations set forth herein.

48.

Plaintiff suffered adverse employment actions including but not limited to ultimately being terminated from her employment with Defendant Board.

49.

Plaintiff was replaced as Interim Director by a Caucasian male on an interim basis, after which the role of Director was filled by a Caucasian female.

50.

The harassment and race-based discrimination suffered by Plaintiff affected a term, condition or privilege of her employment in that she suffered unlawful retaliation and was ultimately terminated.

51.

As alleged herein, the Board knew or should have known of the harassing and discriminatory treatment that Ms. Douglas was subject to during her tenure as Assistant Director and as Interim Director, as primarily initiated by Ms. Coy, but did not undertake any action to

assist Plaintiff or otherwise take prompt remedial action to render assistance to Plaintiff; rather, the Board affirmed and exacerbated the conduct by its actions and inactions.

52.

Defendant's mistreatment of Ms. Douglas constitutes unlawful retaliation under the LEDL and 42 U.S.C. § 2000e-3(a), thus entitling Plaintiff to money damages.

53.

In complaining to the Board that she reasonably believed that she was suffering from race-based discrimination, taking the same complaints to the State Library and Parish Council, and filing a formal EEOC Charge of Discrimination, Plaintiff was engaged in protected activity protected by Title VII and the LEDL.

54.

As alleged above, Plaintiff's termination constitutes an adverse employment action.

55.

As demonstrated herein, a temporal and causal link exists between Ms. Douglas' protected activity of seeking to stop race-based discrimination against herself and the false allegations and, ultimately, her termination that followed almost immediately.

56.

Adding to Plaintiff's humiliation and suffering, Defendant published or caused to be published false and defamatory statements about Ms. Douglas to one or more parties.

57.

Defendant published the defamatory statements knowing that they were false or with reckless disregard for the truth of the statements.

58.

In publishing the false allegations against Ms. Douglas, Defendants were not acting with any legitimate purpose or under a privilege that would absolve the Library Board or Parish from any liability.

59.

As a direct and proximate result of Defendant's intentional and malicious conduct, Ms. Douglas suffered anguish, humiliation, embarrassment and damage to his reputation, all of which are continuing in nature and will continue to be endured in the future.

60.

As a result of the unlawful actions described above, Defendant is liable unto Ms. Douglas for damages, including back pay and front pay; lost benefits; mental anguish; humiliation and embarrassment; loss of reputation; loss of enjoyment of life; foreseeable and unforeseeable damages, compensatory damages; punitive damages; prejudgment interest; attorney's fees and all costs of these proceedings.

61.

Plaintiff is entitled to extraordinary, nonpecuniary damages because Defendant intended, through its agents' egregious conduct toward Plaintiff, to offend and aggrieve Plaintiff's feelings.

## **JURY DEMAND**

55.

Plaintiff demands trial by jury on all issues so triable herein.

WHEREFORE, Plaintiff, Dana Douglas, prays that Defendants, be duly cited and required to appear and answer Plaintiff's Petition for Damages and Jury Demand and, after due

proceedings had and legal delays, there be judgment rendered herein in favor of Plaintiff and against Defendant as detailed in the foregoing First Amended Complaint for Damages and Jury Demand, in an amount reasonable in the premises, together with legal interest from the date of judicial demand, all costs of these proceedings, attorneys' fees and for any and all general and equitable relief deemed appropriate by this Honorable Court under the circumstances.

                                          Respectfully submitted,

                                          */s/* G. Karl Bernard
                                          G. Karl Bernard (#24294)
                                          KARL BERNARD LAW, LLC
                                          1615 Poydras Street, Suite 101
                                          New Orleans, Louisiana 70112
                                          Telephone: (504) 412-9953
                                          Facsimile: (504) 412-8088
                                          Karl.bernard@karlbernardlaw.com

                                          **Attorney for Plaintiff, Dana Douglas**