UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DANA DOUGLAS | * | CIVIL ACTION |
| VERSUS | * | NO. 21-599 |
| ST. JOHN THE BAPTIST PARISH | * | CONMAG. DIV. 2 |
| LIBRARY BOARD OF CONTROL, ET AL. | | |
| | | M.J. CURRAULT |

**ORDER AND REASONS**

Defendant St. John the Baptist Parish Library Board of Control's (the "Board") Motion for Summary Judgment (ECF No. 36) is pending before me in this matter. The Board seeks summary judgment dismissing Plaintiff Dana Douglas' claims of race discrimination, hostile work environment based on race, and retaliation under Title VII and state law. Plaintiff filed Opposition and Supplemental Opposition Memoranda (ECF Nos. 38, 51) and Defendant filed Reply and Supplemental Reply Memoranda (ECF No. 47, 61). The Court held oral argument on Monday, March, 21 2022. ECF No. 64.

Having considered the record, the argument of counsel, and the applicable law, Defendant's motion for summary judgment is GRANTED for the reasons stated herein.

## I.   PROCEDURAL BACKGROUND

### A.   The Claims at Issue

Plaintiff filed suit against the Board and St. John the Baptist Parish Council (the "Council") alleging that Board member Maria Coy (a Hispanic female) began a pattern of harassment (e.g., unannounced visits, unjustified accusations, criticisms, demeaning comments, and public humiliation) directed to the African American Library Director (Trina Smith) and Assistant Director (Plaintiff) shortly after Coy joined the Board in 2017. Plaintiff also alleges that the Board

fired her based on race and in retaliation for making complaints.[1]  After termination, Plaintiff filed

an EEOC charge alleging discrimination based on age and race and retaliation.[2]  Plaintiff later filed

this suit for race-based harassment and discrimination as well as retaliation in violations of Title

VII and Louisiana's Employment Discrimination Laws ("LEDL") and defamation.[3]

In ruling on Defendants' Rule 12(b)(6) partial motion to dismiss, this Court dismissed all

claims against the Council as well as the defamation claim against the Board, but denied the motion

to dismiss Plaintiff's race-based hostile environment claim against the Board, leaving that claim

and the claims for retaliation and discrimination for further proceedings.[4]  At the close of

discovery, the Board filed a Motion for Summary Judgment seeking dismissal of Plaintiff's state

law retaliation claim under the LEDL and her remaining Title VII claims of race-based

discrimination (based on disciplinary actions and termination), race-based harassment, and

retaliation (based on disciplinary actions and termination).[5]

## B.  The Parties' Positions on Summary Judgment

In its summary judgment motion, the Board argues that dismissal is proper because

(1) disciplinary actions are not "adverse employment actions" necessary to support a substantive

discrimination claim; (2) the Board's termination decision was based on legitimate non-

discriminatory reason (i.e., Plaintiff's unauthorized self-effectuated pay raises) and Plaintiff cannot

establish pretext (i.e., its reason was untrue or that its decision was motivated by discrimination);

(3) Plaintiff's evidence does not establish a severe or pervasive hostile environment based on her

---

[1] *See* First Amended Complaint, ECF No. 16, ¶¶ 11–27, 45, 52, 56–57.  Plaintiff filed her original petition in state court on December 7, 2020.  *See* ECF No. 1-2.  She included claims against Maria Coy individually, but omitted those claims in her First Amended Complaint filed in response to Defendants' first Rule 12(b)(6) motion.  *See* ECF Nos. 1-2, ¶ 4, at 2; 8, 16, at 1–2.
[2] ECF No. 16, ¶ 41.
[3] *Id.* ¶¶ 45–55, 56-59.
[4] *See* ECF Nos. 18, 25.
[5] ECF No. 36.

race; (4) Plaintiff cannot establish that she engaged in protected activity, that a causal connection exists between that activity and any adverse action, and (5) the Board has articulated a non-retaliatory reason for termination (i.e., Plaintiff's unauthorized self-effectuated pay raises) and Plaintiff cannot establish that she was terminated "but for" the protected activity (i.e., that the Board would not have terminated her for unauthorized pay raises had she not engaged in protected activity).[6]

Plaintiff opposes the motion, arguing that material fact issues preclude summary judgment and that Defendant's stated reason for termination is not worthy of belief.[7]  Plaintiff argues that she complained to the Council, Board and certain Board members and not long after voicing her complaint, she was accused of the unauthorized payroll theft while no other employee was subjected to the monitoring, criticism, or investigations to which she was subjected.[8]  She also argues that Coy's behavior (challenging her for no reason, making unannounced visits, invading her personal space, accusing her of theft and other unauthorized activities, publicly berating her in front of others, questioning her day-to-day activities and altering Board policies and procedures to remove her from her position) constitutes severe and pervasive harassment to support her hostile environment claim.[9]  Plaintiff filed a Supplemental Opposition that is substantially similar, but not identical, to her Opposition.[10]  Plaintiff's Supplemental Opposition attached declarations from Plaintiff and former Board member Brannetter James, along with deposition excerpts upon which Plaintiff relies to demonstrate material fact issues regarding the reasons for termination.[11]  Plaintiff also filed a Statement of Disputed Facts, for which the court granted leave to file out of time.[12]

---

[6] ECF No. 36-1, at 10–19.
[7] *See* ECF No. 38, at 1–2.
[8] *Id.* at 9; ECF No. 51, at 9–10.
[9] *Id.* at 9–10.
[10] ECF No. 51.
[11] ECF No. 51-1, at 10.
[12] ECF No. 51-4.

Defendant argues in reply that Plaintiff fails to address whatsoever any state law LEDL claims and that Plaintiff concedes that these claims are barred in the Joint Pretrial Order.[13] Defendant also argues that Plaintiff's alleged disciplinary actions do not constitute "adverse employment actions" necessary to support a Title VII claim.[14]  It further argues that Plaintiff failed to introduce any evidence whatsoever to suggest that the Board's legitimate business reason for its termination decision was pretextual, thus precluding her discrimination and retaliation claims.[15] Finally, the Board argues that Plaintiff has not established that she was subjected to a severe or pervasive hostile environment based on her race.  Absent any evidence to suggest that the incidents occurring over a two-year period were race-based rather simply reflective of Coy's dissatisfaction with Plaintiff's work performance and even then, these incidents do not rise to the level necessary to establish a severe or pervasive hostile environment, Defendant argues that Plaintiff cannot prevail on that claim.[16]  In its Supplemental Reply, Defendant reiterates its earlier points and argues that James' computer-signed declaration must be stricken as improper under 28 U.S.C. § 1746, the Court should not consider Plaintiff's declaration because it conflicts with her earlier deposition testimony, and both declarations impermissibly contain conclusory allegations not based on the personal knowledge.[17]

## II.   FACTUAL BACKGROUND

### A.  General Background

The Library Board, which is comprised of seven members appointed by the St. John the Baptist Parish Council, operates the St. John Parish Library.  Maria Coy joined the Board in 2017.[18]

---

[13] ECF No. 47, at 1–2; ECF No. 59, at 14.
[14] ECF No. 47, at 1–2.
[15] *Id.* 2–4; 6–7.
[16] *Id.* at 4–6.
[17] ECF No. 61, at 1–3, 5.
[18] ECF No. 51-1, ¶ 16, at 2.

Plaintiff identifies only Maria Coy as a person who harassed, discriminated and retaliated against her based on race.[19]  Plaintiff has not alleged that any other Board member harbored discriminatory animus toward her.

The Board determines the salaries and hourly wages for library employees based on the recommendation of the Director.[20]  Employees are paid every two weeks (i.e., 26 pay days per calendar year).[21]  The Board has adopted a pay plan applicable to all employees (the "Library Pay Plan"), which includes a step and grade pay scale system.[22]  Employees are compensated and receive increases on a step basis, and the rules prohibit any employee from receiving a merit increase of more than one step in any fiscal year, with all merit increases effective January 1.[23] The Library Pay Plan also addresses compensation for promotions:

> All promotions to a higher grade will result in a pay increase.  A promoted employee will receive a pay increase to Step 1 of the new grade unless the employee's current rate is greater than Step 1, in which case the employee's rate will be moved to the next appropriate step in the new grade, which ensures an increase. . . .[24]

Defendant attached the 2018 pay scale and the proposed 2019 pay scale,[25] but no party has provided any evidence that the Board adopted the proposed 2019 pay scale.

### B.  Plaintiff's Library Employment

The Board hired Plaintiff as a substitute library assistant, beginning on July 24, 2017, at the hourly rate of $13.40.[26]  When Plaintiff was initially hired in 2017, Trina Smith, also African

---

[19] ECF No. 36-3, at 41 (Deposition of Douglas) (stating that she felt she was being targeted based on race by Maria Coy only); at 72 (EEOC charge identifying only alleged discrimination by Maria Coy).
[20] ECF 36-6, at 65.
[21] *Id.*, ¶ 2, at 65.
[22] ECF Nos. 36-2, ¶¶ 6–8; 36-4, ¶ 9, at 2.
[23] ECF No. 36-2, ¶¶ 9–10.
[24] ECF Nos. 36-5, at 57; 51-1, at 34.
[25] ECF Nos. 36-4, at 23; 36-5, at 17, 18.
[26] ECF No. 36-3, at 60.

American, served as the Library Director.[27]  Plaintiff acknowledged receipt of the Board's policies and procedures manual.[28]  These policies included policies prohibiting harassment, discrimination and retaliation.[29]

At a December 11, 2017 Board meeting, the Board authorized a 2% cost of living increase for all employees, to be effective on January 1, 2018.[30]  This cost of living increase was incorporated into the 2018 pay scale.[31]  At that same meeting, Coy initiated a discussion regarding "the unfairness" of all employees receiving a 2% merit raise regardless of the employee's evaluation rating.  By a vote of 5 to 1, the Board approved tying merit increase to the employee's evaluation.[32]  On the Agenda for that December 11, 2017 meeting was a recommendation to hire Plaintiff as the Assistant Library Director.  James moved to accept the recommendation, Coy seconded the motion,[33] and the Board approved hiring Plaintiff as Assistant Library Director by a vote of 4 to 2.[34]

Plaintiff did not remain in the part-time substitute librarian position as of January 1, 2018. Instead, she accepted the Board's offer to change from part-time substitute librarian to full-time Assistant Library Director.[35]  The Board's Assistant Director job offer dated December 15, 2017,

---

[27] ECF No. 51-1, ¶ 10.

[28] *Id.* at 61; ECF No. 36-2, ¶¶ 1–3; ECF No. 51-4, ¶¶ 1–3.

[29] ECF No. 36-2, ¶ 3; No. 51-4, ¶ 3; 36-4, at 9–17.

[30] *Id.* ¶ 4; ECF No. 51-4, ¶ 4; ECF No. 36-4, at 20.

[31] ECF No. 36-4, ¶ 10, at 2.

[32] ECF No. 36-4, at 21.

[33] With Coy supporting Plaintiff's promotion to the Assistant Director, the same actor inference becomes relevant.  The same actor inference creates a rebuttable presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue.  *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421–422 (5th Cir. 2009) (citing *Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 546 (5th Cir. 1996)); *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 n.3 (5th Cir. 1997) (same).  The inference is stronger when (1) there is close temporal proximity between the favorable employment action and the adverse action, and (2) the decision maker is in the same protected category as the plaintiff.  *Jones v. Wells Fargo*, No. 17-8712, 2019 WL 4601602, *12 n.24 (E.D. La. Sept. 23, 2019) (citations omitted).  When the non-moving party has failed to raise a genuine dispute as to a material fact, the same actor inference simply reinforces the defendant's position.  *Id.*

[34] ECF No. 36-4, at 21.  Although the minutes reflect that Ms. Coy seconded the motion to hire Plaintiff, the minutes do not reflect the breakdown of the 4 to 2 vote that ultimately hired her.

[35] ECF No. 36-5, at 16; 36-6, at 21.

explained that Plaintiff would earn an annual salary of $65,310.89 (i.e., $2,511.96 biweekly or $31.40 per hour).[36]  This amount reflected a substantial increase from Plaintiff's $13.40 hourly rate earned as a part-time substitute librarian.  Plaintiff's placement in Grade 9, step 1 under the Library Pay Plan 2018 pay scale was consistent with the Board's promotion policy.[37]

### C.  **Plaintiff's Initial Pay and First Pay Increase**

The Board asserts that the Library Pay Plan 2018 pay scale included the 2% cost of living increase announced in December 2017,[38] and Plaintiff admits she has no evidence to dispute that assertion.[39]  However, after Plaintiff received her first paycheck as Assistant Director on January 24, 2018, which corresponded to the 2018 pay scale for Grade 9, step 1,[40] an email from Plaintiff's work email account was sent to the Library Business Manager directing that the pay for Plaintiff and another employee be increased by 2%, which moved Plaintiff's classification from a Grade 9, step 1 to a Grade 9, ***step 2***.[41]  In that email, the offered annual salary is correctly reflected as $65,310.89 but *incorrectly* indicated to be Grade 9, *step 2*.[42]  Starting Plaintiff at step 2 of Grade 9 would have been inconsistent with the promotion policy given that Plaintiff was not already earning more than the Grade 9, step 1 salary in her part-time position.[43]  The Board asserts that it

---

[36] ECF No. 35-5, at 16; *see also* ECF Nos. 36-5, at 17 2018 pay scales reflecting Grade 9, step 1 salary at $65,310.89); 36-6, at 22 (same).

[37] ECF 36-5, at 57 ("A promoted employee will receive a pay increase to Step 1 of the new grade unless the employee's current rate is greater than Step 1, in which case the employee's rate will be moved to the next appropriate step in the new grade, which ensures an increase. . . ."); 51-1, at 34.

[38] ECF No. 36-4, ¶¶ 8–10, at 2.

[39] Fact Statements, ECF Nos. 36-2, 51-4, ¶¶ 5, 11–12; ECF No. 36-5, at 17.

[40] Fact Statements, ECF Nos. 36-2, 51-4, ¶¶ 13–14; *see also* Third-Party Investigation Report & Supplemental Information, ECF No. 36-5, at 10 ("The annual salary of $65,310.89 is equivalent to the 2018 Pay Scale level of Grade 9, Step 1.").

[41] ECF No. 51-1, at 35; Fact Statements, ECF Nos. 36-2, 51-4, ¶ 15.  Douglas asserts that her supervisor Trina Smith approved the request because Smith was copied on the email, but no Board member was copied on the email.  ECF No. 51-4, ¶ 15; Fact Statements, ECF Nos. 36-2, 51-4, ¶ 17.

[42] *Compare* ECF No. 51-1, at 35 (listing annual salary for Grade 9, step 2 at $65,310.89 and asking for increase to $66,617.10 for Grade 9, step 2) *with* ECF No. 36-4, at 23 (showing the 2018 pay scale which reflects $65,310.89 as Grade 9, step 1 and $66,617.10 for Grade 9, step 2).

[43] *See* ECF No. 36-5, at 57.

did not authorize or approve a step increase for Plaintiff from step 1 to step 2,[44] and while Plaintiff denies this assertion, she offers no evidence to suggest otherwise.

### D. **The ADP Contract**

When the Board was considering contracting with a third party to provide payroll and management services for the library in 2018, an ADP representative gave a presentation at an April 9, 2018 Board meeting in which Plaintiff attended and participated.[45]  Some Board members expressed concern about ADP's system and indicated they wanted another demonstration.[46]  The Board asked Smith and Douglas to provide information and comparisons with ADP and other vendors, but Director Smith signed a contract with ADP.[47]  Defendant contends that Smith signed the contract unbeknownst to it, while Plaintiff contends Smith did not need Board approval to enter into that contract.[48]  Regardless of that disagreement, after that incident, the Board demoted Smith to Children's Librarian and issued a written warning to Plaintiff, which she refused to sign.[49]

### E. **Conflicts Between Plaintiff and Board Member Maria Coy**

Plaintiff states that Coy began making unannounced, disruptive weekly visits and accusing Plaintiff of failing to perform her job duties, regularly berated her in public meetings and in the press, unjustly criticized her, accused her of incompetence and malfeasance almost immediately after she accepted the position of Assistant Director[50] in December 2017.  Plaintiff complains that Coy gave her a low performance evaluation in July 2018[51] and had a hostile interaction with her

---

[44] Fact Statements, ECF Nos. 36-2, 51-4, ¶ 16.
[45] *Id.*  ¶¶ 25–27.
[46] *Id.* ¶ 28.
[47] *Id.* ¶ 29; ECF No. 36-3, at 22
[48] *Id.* ¶ 30.
[49] *Id.* ¶¶ 31–33.
[50] ECF No. 51-2, ¶¶ 12–17, at 2.  Former Board member Brannetter James indicated the visits began in March 2018. ECF No. 51-1, ¶ 25, at 3.
[51] ECF No. 51-2, ¶ 24, at 3.

at a July 2018 public event called "Tales with a Twist."[52]  Although the parties dispute much of that interaction, they agree that Coy questioned Plaintiff as to Director Smith's whereabouts.[53] Plaintiff states that Coy became angry when Plaintiff could not tell her where Smith was and "hovered" over Plaintiff and put her finger in Plaintiff's face.[54]

Plaintiff states that Coy improperly wrote her up in January 2019 in connection with the ADP contract issue.[55]  Plaintiff states that Ms. Coy yelled at her and pointed a finger in her face and had to be escorted out of Plaintiff's office, but Defendant disputes those assertions.[56]  Plaintiff indicates that she first reported Coy's conduct to the Board during a February 2019 meeting, asserting that she complained that she was being harassed and attacked by Coy because of her race.[57]  James testified, however, that Plaintiff informed her and fellow Board member Leatrice Arlie that she felt Coy had a problem with Plaintiff because she was African American shortly after the July 2018 incident.[58]  Regardless, Plaintiff states that she was written up for insubordination the day after the February 2019 Board meeting.[59]  Plaintiff alleges that Coy accused her of approving a $20,000 book purchase without authorization the next month, which resulted in several newspaper articles critical of her job performance, despite the fact that there was no $20,000 book purchase.[60]  Plaintiff attended a March 2019 Council meeting to report Coy's conduct (though there is no evidence that Plaintiff spoke at the Council meeting) and was suspended shortly thereafter based on alleged payroll theft.[61]

---

[52] Fact Statements, ECF Nos. 36-2, 51-4, ¶¶ 23–24.
[53] *Id.*
[54] *Id.* ¶ 24; *see also* ECF No. 36-3, at 19–20.
[55] ECF No. 51-2, ¶¶ 28–32, at 3–4.
[56] ECF No. 51-2, ¶¶ 31–32, at 4; Fact Statements, ¶¶ 30–31, at 4; ECF No. 36-4, ¶¶ 20–21.
[57] ECF No. 51-2, ¶¶ 34–35, at 4.
[58] ECF No. 51-1, ¶¶ 26–27, at 3.
[59] ECF No. 51-2, ¶ 36, at 4.
[60] *Id.*  ¶ 37, at 4.
[61] ECF No. 51-2, ¶¶ 38–39, at 4–5; *see also* ECF No. 51-1, ¶ 45, at 6.

In her deposition, Plaintiff testified that she did not ever hear Coy use any racially derogatory slurs; rather, she heard Coy use terms like "girl," "you people" and "Southern niceties," which Plaintiff perceived as racist.[62]  Plaintiff also states that Coy's treatment of her was very different from her treatment of a Caucasian Business Manager accused of misappropriating funds.[63]  James states that, after Business Manager Michelin was reported for misappropriating library funds for personal use and gain, a newspaper article quoted Coy as cautioning readers not to rush to judgment, but Coy was not supportive of Plaintiff and former Director Smith (also African American) when she routinely ridiculed them and accused them of mismanaging taxpayer dollars and being unfit to carry out their job duties.[64]  Conspicuously absent, however, is any evidence that the business manager was *not* suspended pending investigation or later terminated for the alleged misappropriation of funds.

### F.  Plaintiff's 2019 Pay

The Board states that it had decided to give merit raises only to employees who received an annual evaluation score of 136 or above.[65]  Plaintiff relies on former Board Member James's declaration to somewhat dispute that assertion when James states:  "Unless there is a budget shortfall, for as long as I have served on the Library Board, all employees that have a "Good or above" performance evaluation rating have received merit increases in their compensation."[66]  In any event, Plaintiff received a score of 122 on her 2018 performance evaluation,[67] which she attributes to discriminatory animus of Coy, who rated her at 64.[68]  Notably, Board member Lisa

---

[62] ECF No. 36-3, at 17, 52–54; *see also* Fact Statements, ECF Nos. 36-2, 51-4, ¶¶ 88–91.
[63] ECF No. 51-2, ¶¶ 18–20, at 2–3.
[64] ECF No. 51-1, ¶¶ 33–34, at 4–5.
[65] Fact Statements, ¶¶ 18–22; ECF No. 36-4, ¶ 14, at 3.
[66] ECF No. 51-1, ¶ 30, at 4.
[67] ECF No. 36-5, at 22–23; Fact Statements ¶¶ 18–20.
[68] ECF No. 51-4, ¶ 20, at 3.

Tregre-Wilder (African American) gave Plaintiff an even lower rating of 54, which Plaintiff contends is because Coy and Wilder are longtime friends.[69]

In March or April 2019, an employee thanked one of the Board members for giving her a 4% pay increase, which caused concern because the Board had not authorized a 4% increase.[70] Board member Tatje began a review of payroll documents and concluded that Plaintiff's salary appeared to increase by 11% between December 2017 and March 2019.[71] Plaintiff and Director Smith initially had access to the ADP system to make changes to employees' compensation or pay scale.[72] After Smith's demotion to Children's Librarian on January 17, 2019,[73] the Board selected Plaintiff to serve in Smith's position as Interim Director.[74] At that point, Plaintiff was the only authorized "security master" with access the ADP account.[75]

Following Tatje's interaction with the employee regarding the 4% pay increase, the Board called an emergency meeting during which it asked Plaintiff to explain why a majority of employees received a 4% increase when the Board authorized only a 2% increase.[76] By unanimous vote (including Brannetter James), the Board instructed Plaintiff to adjust the employees' pay downward by 2% or face discipline.[77] In that same meeting, Tatje asked Plaintiff to explain how her pay increased approximately 11% in one year (i.e., increases on January 9, 2019,[78] February 20, 2019,[79] and March 6, 2019[80]). The Board voted unanimously (including Brannetter James) to

---

[69] ECF No. 36-4, at 25; ECF No. 51-1, ¶ 16, at 2.
[70] Fact Statements, ¶¶ 58–59.
[71] *Id.* ¶¶ 60–61.
[72] Fact Statements, ECF Nos. 36-2, 51-4, ¶¶ 35–36.
[73] ECF No. 36-4, at 28.
[74] ECF No. 51-1, ¶ 38, at 5; *see also* ECF No. 51-2, ¶ 26, at 3.
[75] Fact Statements, ¶¶ 35–36.
[76] ECF No. 36-4, at 32.
[77] *Id.*
[78] Fact Statements, ¶¶ 37–39
[79] *Id.* ¶¶ 46–49
[80] *Id.* ¶¶ 54–57.

suspend Plaintiff and directed Plaintiff not to log into any library system until further notice.[81]   The Board unanimously approved Virgie Johnson (African American) as Acting Library Director until further notice.[82]   At the Board's regular April 30, 2019 meeting, the Board unanimously approved hiring Randy De Soto (Caucasian) as Interim Library Director until the Board hired a permanent director[83] and ultimately hired Ashley Tullous (Caucasian) as Library Director.[84]   At the Board's May 14, 2019 meeting, the Board unanimously (including James) approved hiring an outside accounting firm to investigate the library payroll.[85]

The Board contends that Plaintiff improperly increased her pay.   Plaintiff disputes the Board's conclusion that she received improper pay raises.   She contends that her salary was not increased in January 2019 but the Board wrongfully calculated her 2019 bi-weekly pay by dividing her 2018 base salary by 24 periods instead of 26 periods for 2019.[86]   Plaintiff contends that her salary increased in February 2019 due to a Board approved 2% cost of living allowance,[87]   Board member Brannetter James states that Plaintiff's salary only appeared to increase on January 9, 2019 because her base pay was divided by 24 instead of 26, Plaintiff received a 2% merit increase in February 2019, and a 2% cost of living increase in March 2019.[88]

---

[81] *Id.* at 33.  Despite that notice, however, Plaintiff logged into the ADP system on April 26, 2019 and April 29, 2019. Fact Statements, ¶¶ 62–66.
[82] ECF No. 36-4, at 33.
[83] *Id.*, at 35.
[84] ECF No. 51-2, ¶ 47, at 5.
[85] ECF No. 36-4, at 39.
[86] ECF No. 51-4, ¶¶ 37, 46, at 4; *see also* ECF No. 51-1, ¶ 53, at 8, 33.
[87] ECF No. 51-4, ¶ 49.  No party has provided evidence of a 2% increase in *February 2019,* in contrast to the December 2017 minutes reflecting a 2% cost of living increase for 2018.  ECF No. 36-4, at 20.  Further, Ms. James states that the Board approved a 2% cost of living increase in March 2019 (not February 2019) and a merit increase in February 2019.  ECF No. 51-1, ¶53(B)(b) & (c), at 8-9.
[88] ECF No. 51-1, ¶53(b), at 8-9.

At its June 10, 2019 meeting, the Board received a preliminary report from the independent accounting firm hired to investigate the payroll issue, and it received a final report during the executive session at its June 27, 2019 meeting.[89]  The accounting firm's investigation concluded:

> In conclusion, the Assistant Library Director received in total $4,412.60 in unauthorized compensation for the period of our investigation (January 8, 2018 to April 30, 2019).  Such additional compensation was the direct result of her increasing or causing an increase in her salary.[90]

After discussion in executive session, the Board voted to terminate Plaintiff's employment based on the outside accounting firm's investigation and report, with Board member Malik abstaining and Board member James absent.[91]

### G.  **Plaintiff's Complaints**

Plaintiff stated in her EEOC charge, in pertinent part:

> Since July 2018, I was being attacked by a Board Member, Maria Coy, Hispanic Female.  She would say that I was to[o] young for my job and inexperienced, she would tell me I was incompetent.  She did this in front others and at board meetings.  She would also rant about my performance in the newspapers.  In a meeting, she told me "I am not like you southern women, I am not from this country and all of your [niceties]."  I have complained to the board about how I was being treated and I was retaliated against.  The board went as far as saying that it was inappropriate for employee to request to be treated in a professional manner and we do not have a right to request that our boss treat us a certain way.  Ms. Coy has gone into my office and pointed her finger at my face while yelling at me.  Myself and others went to the Parish Counsel [sic] to complain but we did not get any resolution.  Other black employees have also been demoted and or have left because of their treatment.  Ms. Maria Coy has published false allegations in the newspaper about me as well.  This has all been in retaliation for me complaining about her.[92]

Plaintiff reported this incident to Board member Brannetter James and shortly afterwards indicated she felt Coy had a problem with her because she was African American.[93]  Plaintiff states that she

---

[89] ECF No. 36-4, at 43, 51.
[90] ECF No. 36-5, at 13; Fact Statements, ¶¶ 73–76;
[91] ECF No. 36-4, at 51; Fact Statements, ¶¶ 77–82.
[92] ECF No. 36-3, at 72; *see also* Fact Statements ¶¶ 84–91.
[93] ECF No. 51-1, ¶¶ 26–27, at 3.

complained to the Board during a February 2019 meeting that Coy was harassing and demeaning her because of her race, after which she was disciplined.[94]  She also indicates that she attended a Parish Council meeting to complain about Coy's harassment and mistreatment in March 2019, and shortly thereafter, she was suspended for the payroll errors.[95]

### H.  Disciplinary Actions and Termination

On January 11, 2019, Board President Virgie Johnson disciplined Plaintiff for insubordination in connection with Smith's execution of the ADP contract.[96]  The written warning reads, in pertinent part:

> The Assistant Director, Mrs. Douglas, made a presentation to the board seeking consent to acquire the services of ADP to process payroll.  The board made the decision not to authorize this service at the time and instructed Mrs. Douglas to seek other quotes from other companies who provide comparable services.  Mrs. Douglas did not complete this assigned task.  Additionally, Mrs. Douglas was not honest about contracting the services of ADP.  Mrs. Coy specifically asked if ADP was retained and the response from Mrs. Douglas was no we have not.[97]

Plaintiff refused to sign the warning and characterizes it as being disciplined for Trina Smith's signing of the ADP contract.[98]  The Board also issued an oral warning for insubordination and not taking responsibility for compliance with library policy to Plaintiff on February 12, 2019.[99]  Plaintiff refused to sign that disciplinary notice.[100]

The Board suspended Plaintiff after an April 22, 2019 Board Meeting during which Board member Tatje questioned her about pay increases of 4% for the majority of employees and an increase of 11% for her.[101]  The Board members voting in favor of requiring a 2% downward

---

[94] ECF No. 51-2, ¶¶ 34–36, at 4.
[95] *Id.* ¶¶ 37–39, at 4–5.
[96] ECF No. 36-3, at 68–69; 36-4, at 26–27; ECF No. 51-1, ¶ 39, at 5.
[97] ECF No. 36-3, at 68–69.
[98] ECF No. 51-2, ¶¶ 28–30, at 3–4.
[99] ECF No. 36-4, at 29–30.
[100] ECF No. 36-4, at 30.
[101] ECF No. 36-4, at 32–33.

adjustment for employees who improperly received a 4% increase and in favor of suspending Plaintiff were Virgie Johnson, Elois Joseph, Brannetter James, Lise Tregre-Wilder, Blaine Tatje, and Maria Coy, with Leatrice Arlie absent.[102]   The Board discovered that there were procedural defects with Plaintiff's suspension at the April 22, 2019 meeting, and reinstated her with back pay and benefits during that period.[103]   That same day, on May 13, 2019, Interim Director Randy De Soto notified Plaintiff of her 30-day suspension.[104]

At the May 14, 2019 Board meeting, the Board approved engaging an independent accounting firm to investigate the library payroll.[105]   The Board members voting in favor were Arlie, Coy, James, Johnson, Joseph, Wilder, with Tatje absent.[106]   At the Board's June 10, 2019 meeting, the Board voted to extend Plaintiff's suspension to allow time for completion of the independent accounting firm's report.[107]   By a 4-2 vote with 1 abstention (Coy, Johnson, Tatje, and Wilder in favor, James and Joseph against, and Arlie abstaining), Plaintiff's suspension was extended.[108]

After receipt of the independent accounting firm's report, the Board voted to terminate her employment on June 27, 2019.[109]   The Board Members present when voting on Plaintiff's termination were:  Leatrice Arlie (African American), Maria Coy (Hispanic), Virgie Johnson (African American), Eloise Joseph (African American), Blaine Tatje (Caucasian), Lisa Wilder (African American), and Thomas Malik (Caucasian).[110]   Board Minutes reflect that Brannetter

---

[102] *Id.*
[103] Fact Statements, ¶¶70–72. 1 – 2
[104] ECF No. 36-4, at 38.
[105] *Id.* at 39.
[106] *Id.* at 39–40.
[107] *Id.* at 43–44; *see also* ECF No. 36-4, at 46–48.
[108] *Id.* at 43–44.
[109] *Id.* at 51.
[110] Fact Statements, ¶ 81–82.

James was still a member of the Board at that time, but absent at the June 27, 2019.[111]  Brannetter James resigned on July 3, 2019.[112]

## III.   **SUMMARY JUDGMENT STANDARD**

Rule 56 mandates that summary judgment be issued "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[113]   When the moving party carries its initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of a material fact.  If, however, the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[114]   Summary judgment is thus proper if the party opposing the motion fails to establish an essential element of her case.[115]

Summary judgment is not precluded by disputes over facts that are not "material"[116] and disputes that are not "genuine."[117]   "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[118]   All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory

---

[111] ECF No. 36-4, at 50–51.

[112] ECF No. 51-1 ¶¶ 6–8; at 1, 37.

[113] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

[114] *Celotex*, 477 U.S. at 322–25; *see also Moody v. Jefferson Par. Sch. Bd.*, 2 F.3d 604, 606 (5th Cir. 1993); *Duplantis v. Shell Offshore, Inc*., 948 F.2d 187, 190 (5th Cir. 1991).

[115] *See Celotex*, 477 U.S. at 322–23.

[116] A fact is material if its resolution could affect the outcome of the action.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (citation omitted).

[117] A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*., 477 U.S. at 248; *see also Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (citation omitted).

[118] *Delta & Pine Land Co. v. Nationwide Agribus. Ins*., 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).

facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[119]   Likewise, when a party's version of events is "blatantly contradicted by the record," it is not entitled to the benefit of any favorable light.[120]   Thus, the court must resolve factual controversies in favor of the nonmoving party "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[121]

Only evidence—not argument, not facts in the complaint—will satisfy that burden.[122] Unsworn pleadings, memoranda or the like are not competent summary judgment evidence.[123] Summary judgment affidavits must be based on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated therein.[124]   Summary judgment affidavits need not, however, use any magic language, provided the affiant's personal knowledge and competence are reasonably inferred from their positions and the nature of their participation in the matters to which they swore.[125]   Statements made by affiants without personal knowledge are not capable of being presented in admissible form at trial.[126]

---

[119] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.

[120] *Scott v. Harris*, 550 U.S. 372, 376, 380 (2007) (stating plaintiff's selective description of car chase as "controlled" was contradicted by dashcam footage of the high-speed chase).

[121] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted).

[122] *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 164 (5th Cir. 1991).

[123] *Larry v. White,* 929 F.2d 206, 211 n.12 (5th Cir. 1991).

[124] Fed. R. Civ. P. 56(c)(4).

[125] *Matter of Green*, 968 F.3d 516, 523–24 (5th Cir. 2020) (noting personal knowledge may be inferred based on affiant's "sphere of responsibility"); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529–30 (5th Cir. 2005) (inferring personal knowledge based on finding that testimony fell within affiant's "sphere of responsibility").

[126] *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 208 (5th Cir 2018) (citations omitted); *see also McWhirter v. AAA Life Ins. Co.*, 622 F. App'x 364, 366 (5th Cir. 2015) (holding affidavit based on witness' belief rather than personal knowledge is insufficient summary judgment evidence); *Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 881 (5th Cir. 2014) (stating summary judgment affidavit must provide sufficient information to allow the court to conclude that the affiant's assertions are indeed based on personal knowledge, not simply assert that the conclusions are based on personal knowledge); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (stating conclusory assertions in affidavit may not be relied upon on summary judgment).

Generalized testimony of a party's subjective belief is insufficient to create an issue for trial when the beliefs are not substantiated.[127]  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.[128]  If the evidence is merely colorable or not significantly probative, summary judgment is appropriate.[129]

# IV.   APPLICABLE LAW

## A.  Title VII Discrimination

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's race.[130]  Illegal discrimination is different from simple unfair treatment. "[I]t has long been the law in this circuit that Title VII . . . do[es] not protect against unfair business decisions[,] only against decisions motivated by unlawful animus."[131]  "Management does not have to make proper decisions, only non-discriminatory ones,"[132] and Title VII is not a vehicle for judicial second-guessing of business decisions[133] because courts do not try the validity of an employer's good faith belief as to an employee's competence.[134]  Thus, the issue is not whether

---

[127] *Bickerstaff v. Whitney Nat'l Bank*, No. 96-30231, 1996 WL 595654, , at *3 (5th Cir. 1996); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004); *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152–53 (5th Cir. 1995) (holding plaintiff's subjective beliefs are not sufficient to create an issue of fact).

[128] *See Bickerstaff*, 99 F.3d at *2–3 (holding that the evidence "falls within the gambit of subjective speculation and could not prevent summary judgment"); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014) ("No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.").

[129] *Anderson*, 477 U.S. at 249–50 (citations omitted).

[130] 42 U.S.C. § 2000e-2(a)(1).

[131] *Nieto v. L&H Packing Co.*, 108 F.3d 621, (5th Cir. 1997) (citing *Turner v. Tex. Instruments, Inc.*, 555 F.2d 1251, 1257 (5th Cir.1977), *overruled on other grounds by Burdine v. Tex. Dept. of Cmty. Affairs*, 647 F.2d 513 (5th Cir.1981)).

[132] *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (citing *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)).

[133] *Bell v. Bank of Am.*, 171 F. App'x 442, 445 (5th Cir. 2006) (citing *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997)); *see also Armendariz*, 58 F.3d at 151 n.7 (5th Cir. 1995) (holding that establishing the employer's reason as misguided is insufficient; rather "the employee at all times has the burden of proving . . . that those reasons were a pretext for unlawful discrimination").

[134] *Deines v. Tex. Dept. of Prot. & Reg. Servs.*, 164 F.3d 277, 278, 281 (5th Cir.1999) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)) (holding that the issue is not whether an employer's decision was

the Board treated Plaintiff fairly or even whether the Board's decision was correct or reached in error; the only issue is whether the Board's decision was motivated by discriminatory animus.

Proof and finding of discriminatory motive is required.[135]  A plaintiff may prove discriminatory motive through either direct or circumstantial evidence.[136]  Direct evidence is a "statement or written document showing [the employer's] discriminatory motive on its face."[137] The evidence must be direct and unambiguous, allowing one to conclude without any inferences or presumptions that an impermissible factor motivated the decision.[138]  Vague terms are insufficient to plausibly plead discriminatory intent.[139]  Even when a plaintiff perceives the use of a vague term as discriminatory, that subjective belief, no matter how genuine, cannot provide the basis for relief.[140]

When a plaintiff relies on circumstantial evidence, the court analyzes the claim under the *McDonnell Douglas* framework,[141] which allows a plaintiff to create a presumption of

---

the correct one, or the fair one, or the best one, but rather, whether it was motivated by discrimination); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)..

[135] *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citation omitted).

[136] *Id.* (citing *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994)).

[137] *Portis*, 34 F.3d at 329; *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) ("Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.").

[138] *Moss v. BMC Software, Inc.* 610 F.3d 917, 929 (5th Cir. 2010) (internal quotations omitted) (citing *EEOC*, 100 F.3d 1173 at 1181).

[139] *See, e.g., Burrell v. Lab. Ready, Inc.*, No. 09-227, 2012 WL 1565360, at *5 n.13 (M.D. La. Mar. 30, 2012), (stating that the phrase "you people" is not indicative of racial animus and plaintiff's subjective belief otherwise is insufficient), *R.&R. adopted*, No. 09-227, 2012 WL 1565620 (M.D. La. Apr. 30, 2012); *Stone v. Par. of E. Baton Rouge*, No. 06-401, 2008 WL 4534374, *7 (M.D. La. Sept. 30, 2008) (holding that there is nothing directly or indirectly race-based about the words "you people"), *aff'd* 329 F. App'x 542 (5th Cir. 2009); *Maldonado v. FirstService Residential, Inc.*, No. 20--1484, 2021 WL 2517542, at *7 (S.D. Tex. June 18, 2021) (citation omitted) (finding the phrases "those people" and "these people" were insufficient to state a § 1981 claim); *Badaiki v. Schlumberger Holdings Corp.*, No. 4:20-CV-2216, 2021 WL 6010580, at *6 (S.D. Tex. Aug. 23, 2021) (citations omitted), *R.&R. adopted,*, 2021 WL 5542144 (S.D. Tex. Nov. 26, 2021), *R.&R. adopted*,  2021 WL 5769276 (S.D. Tex. Dec. 6, 2021); *McLaurin v. Waffle House, Inc.*, 178 F. Supp. 3d 536, 549 (S.D. Tex. 2016) (citation omitted); *see also Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 420 (5th Cir. 2009) (finding vague comments insufficient to establish discrimination).

[140] *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (citing *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991)).

[141] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03(1973); *see also Cicalese*, 924 F.3d at 766 (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

discrimination by establishing a prima facie case of discrimination:[142] plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group, was treated less favorably than other similarly situated employees outside the protected group, or was otherwise discharged because of her protected trait.[143]

A Title VII discrimination claim requires the plaintiff to establish an adverse employment action, which "includes only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."[144] "Not everything that makes an employee unhappy is an adverse action that can support a claim of discrimination."[145] For instance, disciplinary warnings, receiving a negative or lower performance evaluation than subjectively believed to be appropriate, being chastised by a supervisor, or criticisms do not generally constitute adverse employment actions.[146] Claims based on employment decisions that are not "adverse employment

---

[142] *Ciacalese*, 924 F.3d at 766 (citing *Laxton*, 333 F.3d at 578).

[143] *E.g., Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *see also Nguyen v. Univ. of Texas Sch. of Law*, 542 F. App'x 320, 323 (5th Cir. 2013).

[144] *Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 F. App'x. 917, 922 (5th Cir. 2009) (citation omitted); *see also Culbert v. Cleco Corp.*, 926 F. Supp. 2d 886, 895–96 (W.D. La. 2013) *aff'd*, 538 F. App'x. 504 (5th Cir. 2013). Although a retaliation claim may be based on something less than an ultimate employment decision, a substantive Title VII claim cannot. *McCoy*, 492 F.3d at 559–60.

[145] *Morgan v. La. State Bd. of Barber Examiners*, No. 13-0958, 2015 WL 5604338, at *2 (W.D. La. Sept. 23, 2015) (citing *McLaughlin v. Holder*, 828 F. Supp.2d 230, 239 (D.D.C.2011)).

[146] *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 428 (5th Cir. 2017) (citing *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 373 n.11 (5th Cir. 1998) (noting that a negative performance evaluation does not constitute "an adverse employment action actionable under Title VII"); *Cannon v. St. Paul Fire & Marine Ins. Co.*, No. 3:03-2911, 2005 WL 1107372, at *3 (N.D. Tex. May 6, 2005) (holding that placing an "employee in a remedial program" does not constitute an "adverse employment action" actionable under Title VII)); *see also Price v. Wheeler*, 834 F. App'x 849, 856 (5th Cir. 2020) (receiving a lower evaluation than the employee subjectively believes is appropriate does not constitute an adverse employment action) (citation omitted); *Stuntz v. Lion Elastomers, L.L.C.*, 826 F. App'x 391, 403 (5th Cir. 2020) (accumulating verbal and written warnings insufficient to establish adverse employment action) (citing *Thomas v. Texas Dep't of Crim. Just.*, 220 F.3d 389, 394 n.2 (5th Cir. 2000) (finding two instances of formal discipline did not constitute an adverse employment action)); *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 470 (5th Cir. 2021) (citing *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) ("[C]riticism, such as [a supervisor's] oral threats or abusive remarks, does not rise to the level of an adverse employment action.")); *Credeur v. La. Through Off. of Att'y Gen.*, 860 F.3d 785, 798 (5th Cir. 2017) (stating that chastisement by superiors does not rise to the level of adversity necessary to distinguish the conduct from petty slights, minor annoyances, and simple lack of good manners) (citing *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, (2006))).

actions" cannot support a finding of discrimination under Title VII.[147]

A plaintiff who proffers "a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'"[148]  Specifically, "[t]he employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[149] While the plaintiff must show that a similarly situated comparator was treated more favorably in nearly identical circumstances, she need not prove that the circumstances were identical to her own in every way.[150]

If the plaintiff establishes all four elements of *McDonnell Douglas,* a presumption of discrimination arises and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination.[151]  If the employer does so, the burden returns to plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was not its true reason, but was "a pretext for discrimination, or that a "motivating factor" was the plaintiff's protected characteristic."[152]  The issue at the pretext stage is not whether the employer's reason was correct or fair, but whether the decisionmaker honestly believed the stated reason."[153] Plaintiff must create an issue regarding whether "the employer honestly believes in the reasons it

---

[147] *See, e.g., Stone v. La. Dep't of Revenue*, 590 F. App'x. 332, 335, 339–40 (5th Cir. 2014) (affirming summary judgment on race discrimination claim based on assertion that employer allowed Caucasian employees to telecommute but denied Plaintiff's request to telecommute based on race).
[148] *Lee*, 574 F.3d at 260; *see also Santos v. Wincor Nixdorf, Inc.*, 778 F. App'x 300, 303 (5th Cir. 2019) (citations omitted).
[149] *Lee*, 574 F.3d at 260 (citations and footnotes omitted).
[150] *See id.* at 260–61 (citation omitted).
[151] *Harville v. City of Houston*, 945 F.3d 870, 875 (5th Cir. 2019).
[152] *Sacchetti v. Optiv Sec., Inc.*, 819 F. App'x 251, 253–54 (5th Cir. 2020) (citing *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802)).
[153] *Harville*, 945 F.3d at 877 (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("The issue at the pretext stage is whether Appellee's reason, even if incorrect, was the real reason for Appellant's termination.")); !
*Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) (citation omitted).

offers, not whether [the employer] made a bad decision."[154]   The anti-discrimination laws do not ask a court to sit as a super-personnel department that reexamines an entity's business decisions or the wisdom of those decisions, only to address whether those decisions are the result of discrimination.[155]   The court should not weigh the wisdom of particular employment decisions nor question every management decision and work assignment.   The single issue is whether the employer's decision was motivated by discrimination.[156]

When the employer satisfies its burden of production by articulating a legitimate, nondiscriminatory reason for its decision, the presumption of discrimination "simply drops out of the picture" and plaintiff must prove that the defendant intentionally discriminated against her because of her protected characteristic.[157]   A plaintiff may carry that burden by establishing pretext, either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence,[158] i.e., that the employer's articulated reasons were not its true reasons, but are a pretext for discrimination.[159]   A plaintiff's prima facie case, "combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[160]   It is not enough, however, to *dis*believe the employer; the plaintiff's explanation of intentional discrimination must be believed as the ultimate issue is whether the defendant intentionally discriminated against the

---

[154] *Harris v. Double G. Coatings, Inc.*, No. 96-60485, 1997 WL 255619, at *2 n.4, *7 (5th Cir. 1997)  (citations omitted).

[155] *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 212 (5th Cir. 2018) (citations omitted); *Harris v. Double G. Coatings, Inc.*, No. 96-60485, 1997 WL 255619, at *2 n.4 (5th Cir. 1997) (citing *Ruby v. Springfield R-12 Public School Dist.*, 76 F.3d 909, 912 n.7 (8th Cir.1996)).

[156] *See McVille v. Inter-Cmty.. Healthcare, Inc.*, 460 F. App'x 353, 355 (5th Cir. 2012) (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Deines v. Tex. Dep't of Protective & Reg. Servs.*, 164 F.3d 277, 281 (5th Cir. 1999)).

[157] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993) (citations omitted).

[158] *Harville*, 945 F.3d at 879 (citation omitted).

[159] *Goudeau*, 793 F.3d 470, 476 (5th Cir. 2015) (citing *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir.2015) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000))).

[160] *Reeves*, 530 U.S. at 148; *Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 319 (5th Cir. 2020) (citation omitted); *see also St. Mary's Honor Ctr.*, 509 U.S. at 511;

plaintiff.[161]  Thus, the plaintiff is not relieved of her burden to present evidence that will permit a rational factfinder to infer intentional discrimination.[162]  Even in the face of sufficient evidence for a reasonable factfinder to find pretext and reject the nondiscriminatory reason, if no rational factfinder could conclude that the action was discriminatory, such as when the record conclusively reveals some other, nondiscriminatory reason for the decision, or if the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue and there is abundant and uncontroverted independent evidence that no discrimination occurred, summary judgment will be proper.[163]

### B.  Title VII  - Hostile Environment

In addition to protecting employees from race discrimination in the workplace, Title VII also makes it unlawful for employers to require "people to work in a discriminatorily hostile or abusive environment."[164]  "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"[165]

A hostile work environment claim requires the plaintiff to establish that (1) she is a member of a protected class; (2) she suffered unwelcomed harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment "affected a term, condition, or privilege of employment"; and (5) "the employer knew or should have known" about the harassment and

---

[161] *St. Mary's Honor Ctr.*, 509 U.S. at 519.
[162] *Harville*, 945 F.3d at 877 (citing *Reeves*, 530 U.S. at 153 (noting that the "ultimate question" in cases alleging employment discrimination "is whether the plaintiff was the victim of intentional discrimination" and reminding that "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff") (internal quotation marks and alterations omitted)).
[163] *Id*. at 876–77 (citations omitted)
[164] *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 432–33 (5th Cir. 2022) (quoting *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993))).
[165] *Id*. (*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 106 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)))

"failed to take prompt remedial action."[166]  For harassment to affect a term, condition, or privilege of employment, it "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[167]  In other words, the workplace is permeated with discriminatory intimidation, ridicule, and insult such that it alters the conditions of the victim's employment and creates an abusive work environment.[168]

The environment must be both objectively and subjectively offensive (i.e., one that a reasonable person would find hostile or abusive and one that the victim in fact did perceive to be so).[169]  The totality of the employment circumstances determines whether an environment is objectively hostile.[170]  Although no single factor is determinative, pertinent considerations are: (1) "the frequency of the discriminatory conduct"; (2) "its severity"; (3) "whether it is physically threatening or humiliating, or a mere offensive utterance"; and (4) "whether it unreasonably interferes with an employee's work performance."[171]  To that end, federal discrimination laws are not a general civility code prohibiting all types of harassment in the workplace.[172]  "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[173]

### C.  Title VII - Retaliation

An employee bringing a retaliation claim must first produce evidence of a prima facie case of retaliation:  (1) the employee engaged in an activity that Title VII protects; (2) the employee

---

[166] *West v. City of Houston*, 960 F.3d 736, 741–42 (5th Cir. 2020) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)); *see also Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298 (5th Cir. 2001) (citing *Shepherd v. Comptroller of Pub. Accts. of the State of Tex.*, 168 F.3d 871, 873 (5th Cir. 1999)).
[167] *West*, 960 F.3d at 741–42 (citation omitted).
[168] *Harris*, 510 U.S. at 21.
[169] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. at 21–22)); *Aryain v. Wal–Mart Stores of Tex., LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Faragher*, 524 U.S. at 786).
[170] *Harris*, 510 U.S. at 23.
[171] *Id; EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).
[172] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998).
[173] *Faragher*, 524 U.S. at 788 (internal quotation marks and citation omitted).

was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.[174]  The Fifth Circuit has also described the elements of a prima facie case as requiring the plaintiff to show: (1) that she engaged in protected activity; (2) that the employer knew about the protected activity; and (3) the employer retaliated against her because of the protected activity.[175]  Once an employee establishes a prima facie case, "the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision."[176] After the employee provides that benign reason, "the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation."[177]

An employee has engaged in activity protected by Title VII if she has either (1) opposed a practice made unlawful by Title VII or (2) made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under Title VII.[178]  "[T]he opposition clause does not require opposition alone; it requires opposition of a practice made unlawful by Title VII."[179]  Thus, an employee "cannot simply complain that she received unfair or undesirable treatment."[180]  Under Fifth Circuit precedent, a vague complaint, without reference to an unlawful employment practice under Title VII, does not constitute protected activity.[181]  The employee must

---

[174] *Abbt v. City of Houston*, No. 21-20085, 2022 WL 764999, at *6 (5th Cir. Mar. 11, 2022) (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002)); *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 407–08 (5th Cir. 2021) (citation omitted).

[175] *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019) (citing *United States ex rel King v. Solvay Pharms., Inc.*, 871 F.3d 318, 323 (5th Cir. 2017); *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 323 (5th Cir. 2016)).

[176] *Id.* (citing *Solvay Pharms.*, 871 F.3d at 332 (citation omitted)).

[177] *Id.*

[178] *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)); *see also Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372–73 (5th Cir. 1998) (quoting 42 U.S.C. § 2000e-3(a)).

[179] *E.E.O.C. v. Rite Way Serv.*, Inc., 819 F.3d 235, 240 (5th Cir. 2016) (citation omitted).

[180] *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (citing *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007)).

[181] *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011); *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 396 (5th Cir. 2008) (per curiam) ("Complaining about unfair treatment without specifying why the treatment is unfair, however, is not a protected activity"); *Harris-Childs v. Medco Health Sols., Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (per curiam) (finding that an employee did not engage in protected activity when she complained of harassment but did not mention race or sex).

refer to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its alleged discriminatory practice.[182]

Unlike with a substantive Title VII claim, a retaliation claim only requires a plaintiff to establish a "materially adverse" action, i.e., an action that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."[183] This requirement is less demanding than that required for a substantive Title VII claim, but the requirement of materiality is necessary to separate "significant from trivial harms."[184] It does not encompass "'petty slights, minor annoyances, and simple lack of good manners' that employees regularly encounter in the workplace."[185]

To determine whether an action is "materially adverse," courts consider whether the action affected "job title, grade, hours, salary, or benefits" or caused "a diminution in prestige or change in standing among . . . co-workers."[186] The focus is on the objective qualities of the positions, rather than the employee's subjective preference for one position over another.[187] Thus, the action must be objectively adverse: "A plaintiff's subjective perception that a demotion has occurred is not enough."[188] Certain conduct, such as being chastised by a superior[189] or heightened scrutiny,[190]

---

[182] *Allen v. Envirogreen Landscape Profs., Inc.,* 721 F. App'x 322, 326–27 (5th Cir. 2017) (citing *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 349 (5th Cir. 2007)).

[183] *Burlington,* 548 U.S. at 57; *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs,* 810 F.3d 940, 945 (5th Cir. 2015) (quoting *White,* 548 U.S. at 57); *see also Sharp v. City of Hous.,* 164 F.3d 923, 933 (5th Cir. 1999).

[184] *Aryain v. Wal–Mart Stores Tex. LP,* 534 F.3d 473, 484 (5th Cir. 2008) (quoting *White,* 548 U.S. at 68, 126 S. Ct. 2405); *Keenan v. Tejeda,* 290 F.3d 252, 258 n.4, n.5 (5th Cir. 2002) (citations omitted); *see also Marchman v. Crawford,* 726 F. App'x 978, 985 (5th Cir. 2018).

[185] *Aryain,* 534 F.3d at 485 (quoting *White,* 548 U.S. at 68, 126 S. Ct. 2405).

[186] *Stewart v. Miss. Transp. Comm'n,* 586 F.3d 321, 332 (5th Cir. 2009).

[187] *Hunt v. Rapides Healthcare Sys., LLC,* 277 F.3d 757, 771 n.8 (5th Cir. 2001), *abrogated on other grounds by Wheat v. Fla. Par. Juvenile Justice Comm'n,* 811 F.3d 702 (5th Cir. 2016)). .

[188] *Alvarado v. Tex. Rangers,* 492 F.3d 605, 614 (5th Cir. 2007) (quotation omitted). 1 – 2

[189] *Credeur v. La. through Office of Attny. Gen.,* 860 F.3d 785, 798 (5th Cir. 2017).

[190] *Magiera v. City of Dallas,* 389 F. App'x 433, 437–38 (5th Cir. 2010); *see also King v. Louisiana,* 294 F. App'x 77, 85 (5th Cir. 2008) (citing *White,* 548 U.S. at 68; *Breaux v. City of Garland,* 205 F.3d 150, 158 (5th Cir. 2000)) (holding rudeness and unfriendliness by a supervisor and a co-worker, "unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute actionable adverse employment actions"); *Earle v. Aramark Corp.,* 247 F. App'x 519, 524 (5th Cir. 2007) (citing *White,* 548 U.S. at 68) (finding disciplinary write-ups and micro-managing of plaintiff's performance not materially adverse); *Grice v. FMC Techs. Inc.,* 216 F. App'x 401, 404, 407

is generally not a materially adverse action and thus not sufficient to establish retaliation.

Ultimately, a Title VII retaliation claim must be proved according to traditional principles of but-for causation.[191]  At the prima facie stage, however, the "causal connection" between the protected activity and materially adverse action may be established by showing close enough timing between the two events.[192]  But adverse action that occurs before a "protected activity" cannot form the basis of a retaliation claim.[193]  The causation prong necessarily requires proof that the employer actually knew about the employee's protected activity.[194]  If the employer is unaware of an employee's protected conduct at the time of the materially adverse action, then such action plainly cannot be in retaliation for that protected conduct.[195]

After the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its decision.  After the employer provides its legitimate, non-retaliatory reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext.  Under *Nassar,*[196] a stronger causal connection must be established at the pretext stage.[197]  Specifically, the plaintiff must establish that, "but for" the protected activity, the adverse action would not have occurred.[198]

---

(5th Cir. 2007) (holding unjustified reprimands are "trivial" and not materially adverse; supervisor's increased scrutiny would not dissuade reasonable employee from reporting discrimination).

[191] *Willis v. Napolitano*, 986 F. Supp. 2d 738, 748 (M.D. La. 2013), *aff'd sub nom. Willis v. U.S.*, 576 F. App'x 340 (5th Cir. 2014) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 358–360 (2013)).

[192] *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019) (citing *Feist v. La., Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)); *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020), as revised (Aug. 14, 2020) (stating that "[t]he protected act and the adverse employment action must be very close in time to establish causation by timing alone.") (quotation marks, citation, and alterations omitted)).

[193] *Watkins v. Tex. Dep't of Crim. Just.*, 269 F. App'x 457, 462 (5th Cir. 2008).

[194] *Robinson v. Jackson State Univ.*, 714 F. App'x 354, 360 (5th Cir. 2017) (rejecting "general corporate knowledge" argument and requiring proof of actual knowledge by the decisionmaker) (citation omitted).

[195] *Id.* (citing *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999)).

[196] *See Univ. of Tex. Sw. Med.Ctr. v. Nassar*, 570 U.S. 338,  (2013).

[197] The functional difference between the causation inquiries in the prima facie and pretext analyses is not the type of evidence used, but rather, that the burden at the pretext stage is more stringent.  *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 685 (5th Cir. 2001) (citation omitted).

[198] *Garcia*, 938 F.3d at 243 (5th Cir. 2019) (holding *Nassar*'s heightened but-for causation requirement applies only at the pretext stage); *see also Williams v. B R F H H Shreveport, L.L.C.*, 801 F. App'x 921, 925 (5th Cir. 2020) (same);

## V.   ANALYSIS

### A.  Evidentiary Issues

#### 1.   Plaintiff's Unsupported Denials Are Insufficient to Create a Fact Dispute

In response to many of Defendant's asserted undisputed material facts, Plaintiff responds by "neither admitting nor den[ying]" or "den[ying] as written" the assertion because she does not have sufficient information.[199]  While that may be an appropriate response in the context of a Rule 36 request for admission, it is not proper in the context of a Rule 56 summary judgment motion. In response to a properly supported summary judgment motion, the non-movant "must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[200]

In the absence of proof, the Court will not assume the nonmovant could or would prove the necessary facts, and the mere argued existence of a fact dispute will not defeat a properly supported motion.[201]  Consistent with Fed. R. Civ. P. 56(e)(2) and this Court's Local Rules, for purposes of this summary judgment motion only, the Court deems admitted any fact to which the nonmovant has failed to respond by identifying the evidentiary basis for a genuine dispute of that material fact.

#### 2.  James' Computer-Signed Declaration

Defendant argues that James' declaration must be stricken because it was computer signed

---

*Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that the more stringent "but for" standard applies to the pretext issue after the employer had identified its legitimate business reason).
[199] *Compare, e.g.*, ECF Nos. 36-2, ¶¶ 16, 25, 28 *with* ECF No. 51-4, ¶¶ 16, 25, 28.
[200] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[201] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Simmons v. Berglin*, 401 F. App'x 903, 905, 908 (5th Cir. 2010) (citing *Anderson*, 477 U.S. at 248); *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005) (citations omitted).

and thus fails to comply with 28 U.S.C. § 1746.[202]  In the *Brumfield* case cited by Defendant, Judge Feldman refused to consider a declaration not only because it was the improperly signed, but also because "nearly every statement . . . was made without the personal knowledge of the affiant [and] [m]ost statements are speculative and offered without any supporting facts."[203]  Judge Feldman explained, "unsworn documents *that cannot be presented in a form that would be admissible in evidence at trial* do not qualify as competent opposing evidence.[204]

The 2010 amendments to Rule 56 make clear that a nonmovant may oppose a summary judgment motion with admissible evidence *or evidence that would be admissible at trial*.  Thus, the issue is not whether the James' declaration, in its current form, is admissible in evidence; rather, the proper consideration is whether the facts contained in her declaration are capable of being "presented in a form that would be admissible in evidence."[205]  Although James' declaration fails to comply with § 1746, Plaintiff can rectify that at trial and has James listed on her witness list. ECF No. 59, at 31.  Accordingly, despite its defective form, the Court will consider James' declaration.

Only statements based on James' personal knowledge, however, are properly considered on summary judgment.  Speculative or conclusory assertions are not entitled to any weight.

### 3.  Plaintiff's Declaration Statements Inconsistent With Deposition Testimony

The non-movant generally may not defeat summary judgment by submitting an affidavit that directly contradicts an earlier deposition on which movant has relied upon in its summary

---

[202] ECF No. 61, at 2-3) (citing *Brumfield v. VGB, Inc.*, No. 17-2223, 2018 WL 354294, at *2 (E.D. La. Jan. 10, 2018) (Feldman, J.)).
[203] *Id.*
[204] *Id.* (emphasis added) (citing *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2)).
[205] *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (refusing to strike documents that were not authenticated because Rule 56 requires only that the materials "be capable of being 'presented in a form that would be admissible in evidence.'") (quoting Fed. R. Civ. P. 56(c)(2)); *see also Jones v. Tim Williams Wood Prods., LP*, No. 3:18- 00826, 2020 WL 3815265, at *5 (W.D. La. July 6, 2020) (citation omitted).

judgment motion.[206]   Indeed, the Fifth Circuit generally upholds summary judgments against parties who attempt to retract sworn statements that are fatal to their claims.[207]   Explanations of or supplementations to prior deposition testimony do not offend these rules when they do not "clearly contradict" that deposition testimony.[208]   Likewise, if the non-movant shows that she was confused or made a mistake, the court may consider the contradictory affidavit.[209]

## B.   State Law Claims

Plaintiff's Opposition Memoranda fail to address Defendant's motion to dismiss with regard to the state law claims.   Further, during a status conference discussing the separate pretrial order inserts preceding the Pretrial Conference, Plaintiff conceded that the state law claims were prescribed.[210]   That stipulation in reflected in the Pretrial Order.[211]   Accordingly, Plaintiff's state law claims will be dismissed.

## C.   Race Discrimination Claim

Plaintiff does not suggest that any Board member other than Coy held racial animus against her.   As to Coy, Plaintiff admits that she did not hear Coy use any racially offensive or derogatory terms.   Rather, she perceived Coy's use of terms such as "you people," "girl" and "Southern niceties" as indicative of her racial animosity toward Plaintiff based on race.   As cited above, these

---

[206] *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495–96 (5th Cir. 1996) (stating court may disregard later, inconsistent statement by same party); *see also Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) (allowing the non-movant to create a genuine issue of material fact based upon self-serving, contradictory depositions and affidavits undermines the "utility of summary judgment as a procedure for screening out sham issues of fact"); *Callahan*, 456 F. App'x at 392 (internal citations omitted).
[207] *Crochet v. Bristol-Myers Squibb Co.*, 804 F. App'x 249, 252 (5th Cir. 2020) (citing *Albaugh Chem. Corp. v. Occidental Electrochemicals Corp.*, 4 F.3d 989, 989 (5th Cir. 1993) (gathering cases)).
[208] *Callahan v. Gulf Logs., L.L.C.*, 456 F. App'x 385, 392 (5th Cir. 2011).
[209] *See Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980) (reversing the district court's grant of motion for summary judgment because it found that, although defendant's deposition contradicted his later affidavit on a dispositive fact, the contradiction could well have been attributed to a legitimate reason).
[210] ECF No. 56.
[211] ECF No. 59, at 14.

vague terms are insufficient to constitute direct evidence of discrimination.  Accordingly, Plaintiff must establish a prima facie case under the *McDonnell Douglas* framework.

### 1.  Prima Facie Case

Initially, Plaintiff readily establishes the first two elements of the prima facie case:  she is a member of a protected group and that she was qualified for the position.  Courts regularly recognize that being subjected to close monitoring, receiving disciplinary actions, or getting negative performance evaluations do not rise to the level of an adverse employment action for purposes of a substantive Title VII claim.  Accordingly, other than with regard to her termination, Plaintiff cannot satisfy the third element of a prima facie case (i.e., adverse employment action).

With regard to her termination claim, Plaintiff also satisfies the third element of a prima facie case.  The final element requires Plaintiff to establish that she was replaced by someone outside of the protected class.  Although Plaintiff's immediate replacement, Virgie Johnson, is also African American, Johnson was a temporary replacement before the Board hired DeSoto (Caucasian) as Interim Director and then Tullous (Caucasian) as Director.

Though the Fifth Circuit has not expressly addressed the issue, it has recognized that it is proper to consider any replacement that is not "called, deemed or viewed" as a temporary replacement.[212]  In this case, the Board appointed Ms. Johnson on April 22 and at its next meeting eight days later, on April 30, voted to hire Mr. De Soto as the Interim Director.  ECF No. 36-4, at 33, 35.  Given these facts, it would not appear that anyone viewed, called or deemed Johnson to be anything more than a temporary replacement.  Thus, it is not proper to consider Johnson as Plaintiff's replacement.  Whether De Soto or Tullous is considered Plaintiff's replacement is not

---

[212] *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 322 (5th Cir. 2021).

important as both are Caucasian and thus outside of the protected class.  Accordingly, Plaintiff has established a prima facie case with regard to her claim of discriminatory termination.

### 2. Legitimate Business Reason

The Board has articulated a legitimate business reason for its decision (Plaintiff's improper pay increases).[213]  While Plaintiff contends that she did not receive any unauthorized pay increases, the undisputed facts reflect: (1) Plaintiff's December 15, 2017 offer letter indicated her pay would be $65,310.89;[214] (2) after she received her first paycheck at that rate, a request for a 2% increase was sent from Plaintiff's computer to the business manager, which improperly identified Plaintiff as a Grade 9, step 2[215]employee, and while Director Smith was copied, the Board was not; (3) the Board Library Pay Plan makes clear that the Board, not the Director, authorizes salaries;[216] (4) the Library Pay Plan specifies that no employee shall receive a merit increase of more than one step in any one year, with merit increases effective January 1st;[217] and (5) the outside accounting firm's report includes ADP records reflecting that Plaintiff received paychecks as follows:[218]

| Date | Pay Period | Annual Rate (x 26) | Annual Rate(x 24) |
|---|---|---|---|
| 1/9/2019 (Wed) | $2,775.71 | $72,168.46[219] | $66,617.04[220] |
| 1/23/2019 (Wed) | $2,775.71 | $72,168.46 | $66,617.04 |
| 2/6/2019 (Wed) | $2,775.71 | $72,168.46 | $66,617.04 |
| 2/20/2019 (Wed) | $2,831.22 | $73,611.72[221] | $67,949.28[222] |

---

[213] ECF No. 36-5, at 16; ECF No. 36-6, at 44.
[214] ECF No. 36-5, at 16.
[215] ECF No. 34-4, at 24.
[216] ECF No. 36-5, at 60.
[217] ECF No. 36-5, at 59.
[218] ECF No. 36-6, at 25.
[219] The annual pay of $72,168.46 is a Grade 9, step 6 on the 2018 scale and slightly higher than a Grade 9, step 5 on the Board's proposed 2019 pay scale.  ECF No. 36-6, at 22–23.
[220] The annual pay of $66,617.04 equates to a Grade 9, step 2 on the 2018 scale or a Grade 9, step 1 on the Board's proposed 2019 pay scale.  *Id.*
[221] The annual pay of $73,611.72 is a Grade 9, step 7 on the 2018 scale or slightly higher than a Grade 9, step 6 on the Board's proposed 2019 pay scale.  *Id.*
[222] The annual pay of $67,949.28 equates to a Grade 9, step 3 on the 2018 scale or a Grade 9, step 2 on the Board's proposed 2019 pay scale.  *Id.*

| | | | |
|---|---|---|---|
| 3/6/2019 (Wed) | $2,887.84 | $75,083.84[223] | $69,308.16[224] |
| 3/20/2019 (Wed) | $2,887.84 | $75,083.84 | $69,308.16 |
| 4/3/2019 (Wed) | $2,887.84 | $75,083.84 | $69,308.16 |
| 4/17/2019 (Wed) | $2,887.84 | $75,083.84 | $69,308.16 |
| 5/1/2019 (Wed) | $2,887.84 | $75,083.84 | $69,308.16 |

Regardless of whether Plaintiff's pay increased through intentional conduct or error (e.g., mistaken assumption of 2% increases in 2018 and 2019, or use of 24 versus 26 pay periods), there can be no dispute that Plaintiff's pay exceeded her proper grade and step levels, her pay increased from Grade 9, step 1 salary of $65,310.89 in December 2017 to Grade 9, step 8 salary of $75,083.84 by March 6, 2019, Plaintiff was paid every other Wednesday (26 pay periods per year) and not twice monthly (24 pay periods per year), and the ADP records reflected Plaintiff's *annual* salary at $73,611.72 via the February 5 entry and $75,083.95 via the March 5, 2019 entry.[225]  Plaintiff's almost $10,000 pay increase and jump from step 1 to step 9 in just over a year is a legitimate business reason for the Board's termination decision.

To overcome the Board's legitimate business reason for termination, Plaintiff must do more than establish that the Board was wrong.  She must present "substantial evidence" that the employer's legitimate, nondiscriminatory reason for termination is pretextual.[226]  Pretext is established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"[227]  Plaintiff has not identified any Caucasian employee whose pay increased 8 steps in just over a year, much less one with control over the ADP system, who was not suspended and/or terminated.

---

[223] The annual pay rate of $75,083.84 is a Grade 9, step 8 on the 2018 scale or slightly higher than a Grade 9, step 7 on the Board's proposed 2019 pay scale.  *Id.*

[224] The annual pay rate of $69,308.16 is a Grade 9, step 4 on the 2018 scale or slightly less than a Grade 9, step 3 on the Board's proposed 2019 pay scale.  *Id.*

[225] ECF No. 36-6, at 40, 44, 61.

[226] *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015).

[227] *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).

Although Plaintiff argues that she was treated differently than the Caucasian business manager who was accused of malfeasance, Plaintiff provides no evidence regarding the details of that employee's situation:   no indication to whom the business manager reported, no evidence to whether the business manager was suspended or terminated, no information regarding who made any decision regarding the business manager's employment, and no evidence that Plaintiff and the business manager had similar work or disciplinary history.   An appropriate comparator requires Plaintiff to establish that a similarly situated employee in nearly identical circumstances was treated differently, but Plaintiff has failed to satisfy that burden.

Moreover, during oral argument on March 21, 2022, Plaintiff's counsel conceded that, under Fifth Circuit precedent, the business manager is not a proper comparator.  Plaintiff further conceded she has no proper comparator.  For that reason, Plaintiff's counsel stated that Plaintiff withdrew her opposition to dismissal of the substantive race discrimination claim.

### D.  Harassment Claim

Title VII does not protect employees from difficult or demanding managers, nor does it protect them from harsh language by a supervisor.  Rather, Title VII protects an employee from a hostile work environment based on the employee's membership in a protected class.  Harassment based on a protected trait must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[228]   In other words, the workplace must be so permeated with discriminatory intimidation, ridicule, and insult such that it alters the conditions of the victim's employment and creates an abusive work environment.[229]  And the harassment environment must be both objectively and subjectively offensive.

---

[228] *West*, 960 F.3d at 741–42.
[229] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367 (1993) (cleaned up).

The conduct upon which Plaintiff bases her harassment claim is set forth in detail in Section II(E)-(H).  In short, Plaintiff states that (1) Coy made unannounced visits to Plaintiff's workplace;[230] (2) would yell, point her finger, criticize Plaintiff's work performance, accuse Plaintiff of being incompetent; (3) questioned and became hostile at a July 2018 public event; (4) instigated disciplinary actions in January 2019 and February 2019; (5) instigated Plaintiff's April 2019 suspension; and (6) instigated Plaintiff's June 2019 termination.  None of these events, however, allege acts indicative of harassment based on Plaintiff's race.  Indeed, though Plaintiff states that Coy used terms such as "girl" and "you people," those are race-neutral terms that, while Plaintiff may have subjectively felt they reflected discriminatory animus, are not objectively race-based statements.  Considering the totality of the circumstances, Plaintiff has failed to present sufficient evidence of a race-based, objectively severe or pervasive hostile environment as necessary to support a claim for harassment under Title VII.

Additionally, as with the substantive race claim, during oral argument on March 21, 2022, Plaintiff's counsel conceded that the facts do not rise to the level necessary to establish a hostile environment.  For that reason, Plaintiff withdrew the opposition to dismissal of the hostile environment claim.

### E.  Retaliation Claim

Plaintiff contends that the Board retaliated against her for reporting race discrimination by suspending and terminating her employment and by other conduct (i.e., monitoring, criticizing, negative evaluations, and disciplinary actions).  She relies on much the same conduct as cited to support her harassment claim:  (1) unannounced visits to Plaintiff's workplace;[231] (2) yelling,

---

[230] Defendant asks the Court to ignore this assertion because Plaintiff's declaration contradicts her deposition testimony.  *Compare* ECF No. 51-2, ¶¶12-17, *with* ECF No. 61-2, at 6-11.

[231] *See supra* note 232.

pointing finger, criticizing Plaintiff's work performance, accusing Plaintiff of being incompetent; (3) questioning and becoming hostile at a July 2018 public event; (4) the negative July 2018 evaluation; (5) instigating disciplinary actions in January 2019 and February 2019; (6) instigating Plaintiff's April 2019 suspension; and (7) instigating Plaintiff's June 2019 termination.

## 1.  The Protected Activity

The precise dates of Plaintiff's complaints, the substance of the complaints, and to whom she complained are ambiguous.  Plaintiff appears to assert that she first complained of discrimination and harassment in February 2019[232] while James indicates Plaintiff complained to her and fellow Board member Leatrice Arlie shortly after the July 2018 event.[233]  Either way, whether Coy's alleged retaliation outlined above began shortly after Plaintiff became Assistant Director or in July 2018, unannounced visits, hovering, the July 2018 interaction and the July 2018 evaluation would have occurred before Plaintiff engaged in any protected activity in either July 2018 or February 2019.  Conduct that pre-dates protected activity cannot constitute retaliation.[234]

With regard to the January 2019 disciplinary action, Plaintiff provides no evidence that either Coy or the Board was aware of her protected activity until the February 2019 Board meeting. Prior to that time, only Ms. James and Ms. Arlie heard any complaints from Plaintiff,[235] and there is no evidence that they shared that information with Coy or any other Board member.  Thus, the January 2019 discipline would not appear to support the retaliation claim, leaving only the

---

[232] ECF No. 51-1, ¶ 34, at 4.
[233] ECF No. 51-1, ¶¶ 26-27, at 3.
[234] *Watkins*, 269 F. App'x at 461 (holding that actions cannot be retaliatory if they predate the protected activity).
[235] *Equal Emp. Opportunity Comm'n v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017) (noting that causation prong of a retaliation claim requires the employee to establish that the employer knew about the employee's protected activity, which requires a showing that the decisionmaker—the individual "who actually made the decision or caused the decision to be made"—was aware of the activity) (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000)).

February 2019 disciplinary action, the April 2019 suspension, and the June 2019 termination as possible retaliatory acts.

At oral argument on March 21, 2022, Plaintiff's counsel argued that the protected activity supporting the retaliation claim is only Plaintiff's March 2019 complaints to the Council, abandoning any effort to tether the retaliation claim to the alleged protected activity involving complaints to James in July 2018 or the Board in February 2019.[236]  Thus, that leaves the April 2019 suspension and June 2019 termination as the potential retaliatory acts.

### 2.  The Board's Articulated Legitimate, Non-Retaliatory Reason for its Decisions

The Board has identified Plaintiff's unauthorized pay increases as its legitimate, non-retaliatory reason for Plaintiff's suspension and termination.

As discussed above in Section V(C)(2), the record evidence establishes that, consistent with the Board's promotion policy, the Board offered to hire Plaintiff as Assistant Director at an annual salary of $65,310.89, which equals a Grade 9, step 1, not step 2.[237]  Without Board approval, via an email from Plaintiff's computer, Plaintiff's pay was increased to a Grade 9, step 2 just a few weeks later, in January 2018.[238]  Plaintiff's pay went up again in January 2019, February 2019 and March 2019,[239] increasing by almost $10,000 from her initial salary of $65,310.89 in December 2017 to $75,083.95 in March 2019.  When the Board learned that Plaintiff (and other employees) received improper pay increases, it suspended Plaintiff and engaged an independent accounting

---

[236] Even if the February 2019 oral warning were at issue, courts have recognized that a disciplinary warning or letter identifying misconduct is not a materially adverse act for purposes of a retaliation claim.  *Hernandez v. Johnson*, 514 F. App'x 492, 499 (5th Cir. 2013) (per curiam) (finding a letter identifying instances of misconduct not to be an adverse employment action); *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007) (per curiam) (finding a single written warning for insubordination  and being argumentative not to be materially adverse, particularly when it does not dissuade the employee from filing an EEOC charge).
[237] ECF No. 36-5, at 16.
[238] ECF No. 36-4, at 24.
[239] ECF No. 36-5, at 20.

firm to investigate.[240]  After that independent accounting firm confirmed Plaintiff's pay increased over 11% in just over a year, the Board voted to terminate Plaintiff's employment.[241]

Although Plaintiff argues that her salary only "appeared" to increase in January 2019 because of a calculation error (24 versus 26 pay periods when the payroll switched over to ADP), the evidence is clear that Plaintiff in fact received paychecks every other week in the amount of $2,775,71 for January 9, 23 and February 6, $2,831.23 on February 20, and $2,887.84 on March 6, 20, April 3, 17 and May 1 (thus establishing a 26-pay period year) and that she was not being paid twice a month (which would occur with a 24-pay period year).  The independent investigation report summarized Plaintiff's actual pay information, reflecting paychecks issued every other Wednesday, not theoretical calculations of what her annual pay would be.  ECF No. 36-6, at 25. Thus, Plaintiff's pay did more than "appear" to increase; it in fact increased because she received more money than she should have received.  Further, as Assistant Director, Plaintiff was responsible for Human Resource functions.[242]

Board minutes do not reflect Board approval of a 4% increase in 2019 (i.e., 2% cost of living and 2% merit) and, with Ms. James' Board participation and affirmative vote, the Board specifically instructed that all employees who improperly received 4% increases be adjusted downward by 2%.[243]  And again, Plaintiff was the person responsible for handling the Human Resource issues and the only person with authority to access the ADP system, which she accessed on numerous occasions including January 7, 2019, February 7, 2019, and March 5, 2019.[244]  Other than disagreeing with the Board and the independent accounting firm and arguing they were

---

[240] ECF No. 36-4, at 32-33.
[241] ECF No. 36-4, at 51.
[242] ECF No. 36-4, at 16.
[243] ECF No. 36-4, at 32.
[244] ECF No. 36-6, at 35-44.

wrong, Plaintiff has not provided the evidence necessary to establish that the Board's stated reason for her termination was not the Board's true reason for its decision, that the stated reason is unworthy of credence, or that the Board did not in good faith believe that Plaintiff improperly increased her salary from $65,310.89 when she was hired on December 15, 2017,[245] to $75,083.84 by March 6, 2019.[246]  A majority of the Board and an independent accounting firm disagreed with Plaintiff and Ms. James' argument that Plaintiff's pay had not been improperly increased, and the undisputed facts presented to this Court do not provide any basis to suggest that the Board's decision was not based on this stated reason.

Having articulated its legitimate, non-retaliatory reason for the suspension and termination, the burden shifts back to Plaintiff to establish that "but for" her protected activity (i.e, complaints), she would not have been suspended or terminated.[247]  While Plaintiff disagrees with the independent accounting firm's conclusions and continued at oral argument to argue that Plaintiff's salary only "appeared" to increase, considering the undisputed evidence of Plaintiff's actual pay received, the Library Pay Plan, and the dramatic pay increase in just over a year, Plaintiff simply cannot establish that, "but for" her protected activity, she would not have been suspended or terminated.  In short, no rational factfinder could conclude that, "but for" Plaintiff's protected activity, she would not have been fired in the face of her substantial increase in pay, going from a step 1 to a step 9, in just over one year.

## VI.   **CONCLUSION**

Given Plaintiff's concessions in the Pretrial Order and during oral argument, Plaintiff admittedly cannot defeat Defendant's summary judgment as to her claims for race discrimination,

---

[245] ECF No. 36-5, at 16.
[246] ECF No. 36-6, at 25, 44
[247] *Nassar*, 133 S. Ct. at 2526.

harassment, and retaliation, with the exception of her retaliatory discharge claim which she continues to assert.  As to the retaliatory discharge claim, considering the undisputed evidence and drawing all inferences in Plaintiff's favor, Plaintiff simply cannot establish that, "but for" her protected activity, the Board would not have suspended and terminated her employment based on the issues regarding her pay increases.  While Plaintiff no doubt subjectively believes that the Board's decision was based on her race or protected activity, her subjective belief, no matter how genuine, is insufficient to defeat summary judgment.

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendant's Motion for Summary Judgment (ECF No. 36) is GRANTED.

New Orleans, Louisiana, this ____28th____ day of March, 2022.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE